UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 06-CV-2907 (JFB) (AKT)
———————————

PETER CATALANO,

Plaintiff,

VERSUS

LYNBROOK GLASS & ARCHITECTURAL METALS CORP.,

Defendant.
———————————

MEMORANDUM AND ORDER
January 4, 2008
———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Peter Catalano ("Catalano" or "plaintiff") brings this action alleging employment discrimination in violation of the Federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA") and New York State Human Rights Law, N.Y. Exec. Law §§ 296 *et seq.* ("NYHRL") against defendant Lynbrook Glass and Architectural Metal Corp. ("Lynbrook Glass" or "defendant"). Specifically, plaintiff alleges that defendant discriminated against plaintiff by terminating him because of his age and disability.

Defendant moves for summary judgment. For the following reasons, defendant's motion is denied as to the age discrimination claim. With respect to the disability claim, plaintiff stated for the first time in opposition to summary judgment that he was only raising a "regarded as disabled" claim under the ADA, rather than the disability claim set forth in the complaint. However, the "regarded as disabled" claim is materially different from the claim set forth in the complaint and, thus, was not the subject of questioning during plaintiff's deposition. Accordingly, the Court refuses to consider this new claim without plaintiff's formally moving to amend the complaint and explaining to the Court why such a claim should be added at this late juncture, especially given plaintiff's statement at his deposition that he was not making any such claim.

I. BACKGROUND

A. Facts

The following facts are taken from the parties' depositions, declarations, exhibits and respective Local 56.1 statements of facts.[1] Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). Thus, the Court shall construe the facts in favor of the plaintiff.

1. Plaintiff's Hiring

Joseph Torsiello (hereinafter, "Joseph Torsiello" or "J. Torsiello") began working for Lynbrook Glass in 1975 and became President when he purchased it in the mid-1990s from his father, who has since retired. (Def.'s Rule 56.1 Statement ("Def.'s 56.1") ¶ 2.) J. Torsiello's brother, Larry Torsiello ("L. Torsiello"), began working with Lynbrook Glass in the 1980s as Vice President. (*Id.* ¶ 4.) J. Torsiello testified that, in 1989, he approved a job description prepared by Consultec Associates regarding a comptroller position. (J. Torsiello Dep. 22-23.) Plaintiff disputes any reference to the word "comptroller." (Pl.'s Dep. 13; Def.'s Ex. A ¶ 2.) J. Torsiello testified that he replaced the word "controller" with "chief financial officer" to satisfy the controller who had the position in 1989, and testified that it was the same position. (J. Torsiello Dep. 60.)

J. Torsiello hired plaintiff for the position of "controller" on December 8, 1997. (Def.'s 56.1 ¶ 14.) Plaintiff was fifty-nine (59) years old when hired. (*Id.* ¶ 15.) As controller, plaintiff's duties included a complete oversight of the accounting department, which consisted of accounts payable, accounts receivable, payroll and any related items, insurance matters, preparing financial reports, overseeing contract administration, working with the Company's accountants, and preparing schedules and reports necessary for interim and year-end reports. (*Id.* ¶ 16.) However, plaintiff contends that he was not charged with all of the duties set forth in the job description, nor did defendant ever provide plaintiff with a copy of such description. (J. Torsiello Dep. 23.)

2. Plaintiff's Job Performance

The articulated basis for plaintiff's termination was his alleged poor job performance over the course of his time at Lynbrook Glass. The following evidence is contained in the record concerning the plaintiff's performance.

J. Torsiello testified that, during the first year of plaintiff's employment, plaintiff was a good worker, worked hard, and put in a lot of effort. (*Id.* at 28.) However, according to J. Torsiello, he wanted plaintiff to be more proactive than reactive (Def.'s 56.1 ¶ 23), and J. Torsiello informed plaintiff of this during his first year review on February 4, 1999. (J. Torsiello Dep. 30-31; Def.'s Ex. C.) J. Torsiello also testified that plaintiff's sloppiness and errors were a reoccurring problem throughout his first year (J. Torsiello Dep. 28), but plaintiff disputes this, contending there is no such reference in defendant's written performance log to which defendant cites. (Def.'s 56.1 ¶¶ 23-24; Pl.'s 56.1 ¶¶ 23-24; Def.'s Ex. C). Plaintiff contends that at no point in time during his

---

[1] Where only one party's 56.1 statement is cited, the fact is not contested by the other party or the other party has offered no evidence to controvert that fact.

employment with defendant did defendant ever provide plaintiff with written performance evaluations. (Pl.'s Dep. 89.) At the end of his first year, plaintiff received a raise of $75 per week, bringing his salary up to $1,190 per week. (Def.'s 56.1 ¶ 25.)

In July 1999, the Company implemented a new computer system. (Def.'s 56.1 ¶ 26.) J. Torsiello testified that, by February 2000, plaintiff had not yet changed over to the new system. (J. Torsiello Dep. 41; Def.'s Ex. C.) This system involved a new accounting software program that plaintiff was responsible for getting up and running. (*Id.*) Instead, according to J. Torsiello, plaintiff operated both systems concurrently, double-entering data for almost a year and a half. (*Id.*) J. Torsiello testified that he blamed plaintiff for the computer failure and, as a result, did not give him a bonus at that time. (*Id.*) Plaintiff, however, denies that he was solely responsible for implementation of the computer system. (J. Torsiello Dep. 39-40; Pl.'s Dep. 74.) According to plaintiff, J. Torsiello brought in an outside company to upgrade the system, and that company failed to complete the assignment for more than six months. (Pl.'s Dep. 74.) Plaintiff further contends that all employees experienced a learning curve associated with the upgrade. (J. Torsiello Dep. 40-41.)

J. Torsiello conducted another annual review in February 2000. J. Torsiello was disappointed with plaintiff's work, which he contends was sloppy and contained many typographical errors and incorrect numbers. (*Id.* at 33-36.) According to J. Torsiello's written performance log, plaintiff did not read or review documents before presenting them to defendant. (*Id.* at 34.) J. Torsiello also mentioned that plaintiff was not a strong manager (*id.*) and that J. and L. Torsiello had

to go over the accounts receivable because plaintiff was backlogged with other work (Def.'s Ex. C). However, plaintiff contends that J. Torsiello still regarded plaintiff as a "good worker" and "great controller" and never advised plaintiff as to the perceived sloppiness or errors in his work. (Pl.'s Dep. 87-88; J. Torsiello Dep. 100.) J. Torsiello is not in possession of plaintiff's allegedly deficient work product. (Def.'s Ex. L, at 9.) Similar disputed performance issues and contentions are prevalent between the years 2001 and 2005.[2]

Defendant also cites to two notable performance issues by plaintiff. The first involved improper handling and oversight of an audit of the books and records of Lynbrook Transportation Corporation relating to the IBT Local 282 fringe benefit funds. Defendant alleges that plaintiff allowed for the production of Lynbrook Glass records, thereby triggering a claim for $52,000 in fringe benefit contributions and a resulting lawsuit. (J. Torsiello Dep. 88-91, 108-109.) Plaintiff contends that he was not solely responsible for such an audit, and J. Torsiello delegated a large portion of such an assignment to an assistant bookkeeper, Karen Tucillo. (Pl.'s Dep. 42, 45, 164-167.) The second incident involved plaintiff's failure to ensure that CNA Insurance Company was not overpaid premiums, and that plaintiff was unable to resolve the matter. (J. Torsiello Dep. 83-86.) Plaintiff claims that he was simply required to check the classifications

---

[2] The Court notes that the details of these disputes regarding the sufficiency of plaintiff's performance during the years of his employment are set forth in the parties' respective Rule 56.1 Statements (with citations to the record) and are not repeated here.

3

and that J. Torsiello personally objected to such wrongful classifications. (Pl.'s Dep. 54.)

Plaintiff notes that, despite all of these alleged performance problems between 2001 and 2005, plaintiff continued to receive salary increases and bonus payments that were approved by both Torsiello brothers. (J. Torsiello Dep. 100; Pl.'s Dep. 73, 76; L. Torsiello Dep. 40.) In February 2000, plaintiff received a $40 per week increase in salary and a $3,000 bonus. (Def.'s 56.1 ¶ 39.) Plaintiff did not receive a bonus in December 2000. (Def.'s Ex. C.) J. Torsiello testified that he did not give plaintiff a bonus because of plaintiff's failure to convert over to the new computer system and other performance issues. (J. Torsiello Dep. 39.) Plaintiff, however, contends that defendant's Exhibit C indicates that plaintiff was denied a bonus because he was paid while he was out on medical leave. (Pl.'s 56.1 ¶ 44; Def.'s Ex. C.) Plaintiff received a raise and bonus in February 2002. (Def.'s 56.1 ¶ 56.) During an early review in 2003, plaintiff received a $50 per week wage increase and a $4,000 bonus. In February 2003, J. Torsiello's mother, a bookkeeper at Visiontron, suffered a stroke and missed time from work. (Def.'s 56.1 ¶ 63.) As a result, plaintiff split time between Lynbrook and Visiontron and did a lot of extra work at Visiontron. Plaintiff received an $8,000 bonus in 2003. (*Id.*) According to J. Torsiello, the bulk of the work and plaintiff's efforts merited the high bonus. (*Id.*) On January 29, 2004, J. Torsiello gave plaintiff another wage increase of $55 per week. J. Torsiello testified that the purpose of these raises and bonuses was to keep plaintiff motivated. (J. Torsiello Dep. 49-50, 100.) Plaintiff did not receive a bonus in December 2004 and did not receive a raise in February 2005. (Def.'s 56.1 ¶ 68.)

3. The Replacement

J. Torsiello testified that, between February 2001 and February 2005, he and L. Torsiello considered replacing plaintiff.[3] (J. Torsiello Dep. 98-99.) According to J. Torsiello, they ultimately did not replace him on those prior occasions because of the potential staffing issues that could have resulted from the small size of the company. (*Id.*) Staffing became more stable in 2004 and 2005, so the Torsiellos again raised the issue of replacing plaintiff. (*Id.* at 67.) After plaintiff's review in February 2005, J. Torsiello decided to discharge plaintiff. (*Id.* at 58.) J. Torsiello testified that his termination plan consisted of interviewing candidates, finding a replacement and discharging plaintiff. (*Id.* at 61.)

In mid-February 2005, Castellano, Korenberg & Co. referred Louis Veneziano ("Veneziano") to Lynbrook Glass as a candidate for the "controller" position. (Torsiello Dep. 64.) Torsiello interviewed Veneziano and gave him an offer of employment on March 10, 2005. (J. Torsiello Dep. 64; Def.'s Ex. J.) However, Veneziano turned down the offer. (J. Torsiello Dep. 65.)

On March 17, 2005, J. Torsiello placed a classified ad in Newsday for a controller. (J. Torsiello Aff. ¶ 3; Def.'s Ex. K.) The ad ran from March 20, 2005 to April 2, 2005. (*Id.*) Lynbrook Glass interviewed David Goldberg ("Goldberg") and offered him the controller position at some time prior to April 5, 2005.

---

[3] J. Torsiello testified that, on April 9, 2001, he hired Bruce Miller ("Miller") as a replacement for another bookkeeper, Karen Tucillo, or possibly as a replacement for plaintiff. (J. Torsiello Dep. 46; Def.'s Ex. C.) However, Miller was not a good hire and was let go within a year. (*Id.*)

4

(J. Torsiello Dep. 65, 95; Def.'s Ex. D; Def.'s Ex. L, at 9.)

On April 11, 2005, Goldberg began employment with Lynbrook Glass. (*Id.*) However, on May 5, 2005, Goldberg was discharged. (J. Torsiello Dep. 95, Def.'s Ex. D; Def.'s Ex. L, at 9.) J. Torsiello testified that Goldberg was unfamiliar with the construction industry and that it quickly became evident that he was not working out. (J. Torsiello Dep. 94.) Plaintiff avers that Goldberg was in his forties and was approximately twenty-five years (25) younger than plaintiff, who was sixty-seven (67) upon termination. (L. Torsiello Dep. 55; Pl.'s Dep. 117.)

J. Torsiello ran another classified ad in Newsday from May 8, 2005 to May 21, 2005. (J. Torsiello Aff. ¶ 4; Def.'s Ex. K.) On May 23, 2005, Lynbrook Glass hired Richard Belcheck ("Belcheck"). (Torsiello Aff. ¶ 6; L. Torsiello Dep. 73-75.) Mr. Belcheck was sixty (60) years old at the time he was hired as controller. (J. Torsiello Aff. ¶ 6; Def.'s Ex. L, at 9.)

Lynbrook Glass currently consists of six employees in addition to Mr. Belcheck. These employees are all over the age of 40. (J. Torsiello Aff. ¶ 7.) Plaintiff contends that Goldberg should be included on this list of employees and that Goldberg was approximately twenty-five (25) years younger than plaintiff at the point he was hired. (L. Torsiello Dep. 55; Pl.'s Dep. 117, 129.)

4. Plaintiff's Termination

On March 22, 2005, plaintiff took a leave of absence to have hip replacement surgery. (Def.'s 56.1 ¶ 100.) J. Torsiello called plaintiff on April 5, 2005, and informed him that he was being discharged. (*Id.* ¶ 103.) Plaintiff admits he was told he was being discharged for poor job performance. (*Id.* ¶ 104.)

J. Torsiello testified that the decision to discharge plaintiff was made in February 2005. (J. Torsiello Dep. 58.) Plaintiff, however, alleges that the decision to fire plaintiff was made after defendant's awareness during the end of year 2004 of plaintiff's impending hip surgery during March 2005. (Pl.'s Dep. 98-99; J. Torsiello Dep. 51.) Plaintiff testified that his surgery was discussed with J. Torsiello in advance of plaintiff's 2005 termination. (Pl.'s Dep. 98; J. Torsiello Dep. 52-53.) Furthermore, plaintiff contends that J. Torsiello was aware of plaintiff's anticipated date of retirement and joked that plaintiff would be terminated one day in advance. (Pl.'s Dep. 93-94; J. Torsiello Dep. 57, 62.)

Plaintiff further alleges that, when plaintiff told defendant during the end of year 2004 that he was going to have hip surgery, defendant said that plaintiff was "getting old and broken down." (Pl.'s Dep. 98-99, 131.)

5. Prior Instances of Missed Time from Work

From approximately July to mid-August 2000, plaintiff missed six (6) weeks of work due to prostate surgery. (Def.'s 56.1 ¶ 116.) On June 26, 2001, plaintiff was involved in a work-related automobile accident, but did not miss time from work. (*Id.* ¶ 118.) In 2003, plaintiff missed a day of work to undergo a hernia procedure, but was paid for the day. (*Id.* ¶ 121.)

Both parties concede that no one at Lynbrook Glass complained about plaintiff's

missed time or any limitations that might have resulted from the accident. Plaintiff still received raises and bonuses despite the missed time. The Company never took any adverse actions against plaintiff as a result of the three above-mentioned instances.[4]

B. Procedural History

On June 17, 2005, plaintiff filed a verified complaint with the New York State Division of Human Rights charging defendant with discrimination pursuant to the ADEA, the ADA, and New York State Human Rights law. Plaintiff received a "Right to Sue" letter, dated March 13, 2006.

Plaintiff initiated the instant action on June 9, 2006. On September 28, 2007, defendant moved for summary judgment. Oral argument was held on November 14, 2007.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding summary judgment unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R.*

---

[4] Plaintiff concedes that the prior instances of missed work are not part of plaintiff's disability discrimination claim. (Def.'s 56.1 ¶ 125.)

*Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g. Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

### III. Discussion

#### A. Age Discrimination Under ADEA

Claims of age discrimination brought under New York State law are analyzed using the same framework as claims brought under the ADEA, and the outcome under state law will be the same as the outcome under the ADEA. *See Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999). Accordingly, as discussed in III(A)(2), *infra*, plaintiff's state law claim survives summary judgment on the same basis as his ADEA claim.

##### 1. Legal Standard

The ADEA states that it is "unlawful for an employer . . . to discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (2006). Because plaintiff presents no direct evidence of discriminatory treatment based on his age, the Court reviews his ADEA claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 194 (2d Cir. 2007); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

To establish a prima facie case of age discrimination, a plaintiff must demonstrate that: "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone 'substantially younger.'" *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "*de minimis*." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once a plaintiff establishes a prima facie case of discrimination, "the burden of production [shifts] to the defendant, who must proffer a 'legitimate, non-discriminatory reason' for the challenged employment action." *Woodman*, 411 F.3d at 76 (citing *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001)). If the defendant articulates a legitimate, non-discriminatory reason, plaintiff must then prove that defendant's articulated reasons are pretextual. *See id.* at 76. "In short, the ultimate burden rests with the plaintiff to offer evidence 'sufficient to support a reasonable inference that prohibited [age] discrimination occurred.'" *Id.* (citing *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000)).

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that he satisfies "*McDonnell Douglas'*s minimal requirements of a *prima facie* case" and to put forward "evidence from which a fact finder could find that the employer's explanation . . . was false." *James*, 233 F.3d at 157. Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove-particularly discrimination." 233 F.3d at 157; *see Lapsley v. Columbia Univ.*, 999 F. Supp. 506, 513-16 (S.D.N.Y. 1998) (advocating elimination of *McDonnell Douglas* test in favor of simplified approach focusing on ultimate issue of whether sufficient evidence exists to permit jury to find discrimination); *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

2. Application

At the outset, the Court finds that plaintiff has made out the prima facie case required by *McDonnell Douglas*, based upon, as discussed more fully below, the adverse employment action, plaintiff's membership in the protected class, as well as evidence relating to the timing and circumstances surrounding his termination, the hiring of his replacement, and the age-related comment made by J. Torsiello. In response, defendant has established a legitimate non-discriminatory reason for his dismissal, namely, plaintiff's alleged poor performance during his time at Lynbrook Glass. Hence, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find age discrimination by examining each party's evidence individually and then proceeding to evaluate the evidence as a whole. *See Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 742 (S.D.N.Y. 2005); *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir. 1997); *see also Siano v. Haber*, 40 F. Supp. 2d 516, 520 (S.D.N.Y.), *aff'd mem.*, 201 F.3d

432 (2d Cir. 1999); *Lapsley*, 999 F. Supp. at 515.

In response to defendant's motion for summary judgment, plaintiff points to several pieces of evidence in support of his argument that a reasonable jury could find that defendant's proffered non-discriminatory reason for the termination was a pretext for age discrimination. First, plaintiff argues that he consistently received salary raises and substantial bonus payments in recognition of his work performance over his time at Lynbrook Glass, and he never received a negative performance evaluation. Second, plaintiff argues that an inference can be drawn from the timing of the termination because the decision was made shortly after plaintiff advised defendant of his need for hip replacement in late 2004. According to plaintiff, that evidence is compounded with evidence that defendant was aware of plaintiff's anticipated date of retirement prior to making the decision to terminate his employment. Third, plaintiff argues that plaintiff's replacement was approximately twenty-five years younger than plaintiff. Finally, plaintiff argues that an inference of discrimination can be drawn from Joseph Torsiello's comment just four months prior to plaintiff's termination that plaintiff was "getting old and breaking down." (Pl.'s Dep. 99.)

Defendant argues that such evidence is insufficient to defeat the motion for summary judgment. First, defendant contends that the that the age-related comment made by defendant is too isolated to show discriminatory animus and that the comment was made by the same actor that hired plaintiff. Second, defendant argues that the evidence that plaintiff was fifty-nine when hired and consistently received raises and bonuses throughout his tenure indicates no age discrimination. Third, defendant notes that the current employee in that position is sixty years old. Thus, defendant contends that plaintiff has failed to offer any evidence to undermine the articulated, non-discriminatory reason for plaintiff's termination – namely, his poor performance.

The Court recognizes that the mere fact that an employee disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not demonstrate, by itself, that the employer's proffered reasons are a pretext for termination. *See, e.g., Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 761 (8th Cir. 1998) (stating that "the relevant inquiry was whether [plaintiff] created a genuine issue of material fact as to whether her discharge was gender-based and not whether her termination was reasonable" and noting that "[i]t is not the task of this court to determine whether [the investigator's] investigation was sufficiently thorough or fair"). However, having carefully examined the evidence contained in the record, the Court concludes that, when viewed as a whole and in the light most favorable to plaintiff, the evidence creates genuine issues of material fact as to whether defendant's stated reason for terminating plaintiff was pretextual, and whether age was a factor in the termination decision. Plaintiff's evidence in the record – including the evidence that plaintiff has proffered to show that he was a hard worker who consistently received raises and bonuses over the course of his employment, the age of plaintiff's immediate replacement (who was 25 years younger than plaintiff), and the evidence regarding the timing of the age-related comment by J. Torsiello with the termination of plaintiff – if credited, provides a factual basis from which

9

a jury could infer discriminatory intent and, thus, creates genuine issues of material fact that defeat defendant's motion for summary judgment.

The Court finds defendant's arguments in support of the motion for summary judgment unpersuasive. Defendant argues that the alleged age-related discriminatory comment by Joseph Torsiello that plaintiff is "getting old and breaking down" cannot be used to establish pretext. In support, defendant cites to a line of cases for the proposition that a "stray remark [is] insufficient to establish discrimination and avoid summary judgment." (Pl.'s Opp. Br. at 23.) *See, e.g., James*, 233 F.3d at 152-53 (holding comment to be insufficient); *Molin v. Shapiro*, No. 03-7045, 2003 WL 22056217, at *1 (2d Cir. Sept. 4, 2003) (summary order) (same); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 667-68 (W.D.N.Y. 1992) (same).

These cases, however, are clearly distinguishable from the instant case. As a threshold matter, the comment here was made by a lead decision-maker. *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996) (holding that an inference of discrimination may arise from "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus"); *see also Azar v. TGI Friday's, Inc.*, 945 F. Supp. 485, 499 (E.D.N.Y. 1996) (holding discriminatory comments not stray where they were made by superior who advised decisionmaker on personnel matters related to plaintiff). Joseph Torsiello, as President of Lynbrook Glass, was in charge of hiring and firing plaintiff. As such, a reasonable jury could surely find a nexus between defendant's comment and the employment decisions at issue.[5]

Furthermore, as noted *supra*, this comment, although important to plaintiff's case, is not the only evidence upon which he seeks to rely to demonstrate pretext and the comment must be considered in the context of

---

[5] Defendant has submitted the reply affidavit of Joseph Torsiello in which Mr. Torsiello states that, "Any comment I may have made in December 2004 referring to Plaintiff as getting older or starting to break down, such comment was merely a joke and was in no way related to any decisions pertaining to Plaintiff's employment." (J. Torsiello Reply Aff. ¶ 5.) In seeking summary judgment, defendant also points to Joseph Torsiello's deposition testimony in which he stated that age was not a factor in the decision to terminate. (Def.'s Reply Br., at 3.) It may well be that a jury may credit Mr. Torsiello's testimony that any derogatory references to plaintiff's age were a joke and also credit the other evidence to which defendant has pointed to support their contention that plaintiff was fired because of his poor performance, rather than any pretext. However, it is not the role of the Court to make these credibility determinations on summary judgment; rather, it must assume that plaintiff's testimony will be credited and draw all reasonable inferences in plaintiff's favor. *See, e.g., Shager v. Upjohn Co.*, 913 F.2d 398, 402 (7th Cir. 1990) ("[T]he task of disambiguating ambiguous utterances is for trial, not for summary judgment."); *Gipson v. Wells Fargo N.A.*, 460 F. Supp. 2d 15, 27 (D.D.C. 2006) ("Since there is a genuine issue as to any meaning in [the Area Manager's] comment, and since the meaning in that comment is material to the outcome of the case, the question must be presented to the jury for final resolution."). As analyzed above under that standard, summary judgment in the defendant's favor is unwarranted. *See, e.g., Huff v. Uarco, Inc.*, 122 F.3d 374, 385 (7th Cir. 1997) ("We do not imply that plaintiffs have a strong case but rather only that they have enough of a case to go to a jury.").

the totality of the evidence. The Second Circuit has emphasized that "[a]lthough evidence of one stray comment by itself is usually not sufficient proof to show age discrimination, that stray comment may 'bear a more ominous significance' when considered within the totality of the evidence." *Carlton v. Mystic Transp. Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)); *see Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 522-23 (S.D.N.Y. 2004) (stating the temporal proximity of "stray" age-discriminatory comments, a mere three months before the adverse action, can give rise to an inference of discrimination and should therefore survive summary judgment). Thus, "such statements, when considered in conjunction with other evidence, could support an inference of discriminatory intent under the indirect burden-shifting method." *Huff,* 122 F.3d at 385. In conducting this analysis, the "reasonableness of such an inference in any given case . . . would depend on the nature of the alleged discriminatory remarks, their relationship to the employment decision in question, the nature of the stated reason for the employer's action, and the existence of other evidence calling that reason into doubt." *Fuka v. Thomson Consumer Elecs.,* 82 F.3d 1397, 1406 (7th Cir. 1996).

In the instant case, the comment in question allegedly occurred when plaintiff advised defendant of his impending hip replacement surgery and corresponding need for medical leave. Plaintiff was terminated four months after the comment was made. (Def.'s Br., at 23.) A jury can consider such evidence in conjunction with other evidence in this case, including the circumstances surrounding plaintiff's termination, plaintiff's history of raises and bonuses, and the age of plaintiff's replacement, to determine whether the proffered reason for termination was pretextual. Thus, when the comment is considered in conjunction with the totality of the evidence, the Court concludes that the evidence creates genuine issues of material fact as to whether defendant's stated reason for terminating plaintiff was pretextual and whether age was a factor in the termination decision.[6]

Defendant further argues that summary judgment is warranted because the defendant was the same person that hired the plaintiff approximately seven years earlier. That argument is similarly unavailing. The Second Circuit has noted that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to

---

[6] Although defendant has attempted to cite a series of cases where summary judgment was granted by the court in defendant's favor on age discrimination claims (including a list provided at oral argument), none of them are analogous to the combination of evidence relied upon by plaintiff in the instant case. For example, although defendant relies upon *Spahr v. Am. Dental Ctrs.,* No. 03 CIV 4954 (DRH) (ARL), 2006 WL 681202 (E.D.N.Y. Mar. 14, 2006), the court in that case found that summary judgment for defendant was warranted where, among other things, there was only a five-year difference between plaintiff and her replacement and plaintiff at her deposition "admitted to the very acts of insubordination and dereliction of duty that resulted in her termination." *Spahr,* 2006 WL 681202 at *5. Here, unlike plaintiff in *Spahr*, Catalano has submitted evidence contesting the alleged poor performance that was the articulated basis for his termination and has supplied other evidence to create an issue of fact on the issue of pretext, including the statement by J. Torsiello in late 2004 and the fact that plaintiff's initial replacement was 25 years younger than plaintiff. Thus, this combination of evidence clearly distinguishes the instant case from *Spahr* and the other cases cited by defendant where summary judgment was granted for the employer.

impute to her an invidious motivation that would be inconsistent with the decision to hire." *Grady v. Affiliated Cent. Inc.*, 130 F.3d 553, 560 (2d Cir. 1997). However, courts generally have found this same-actor argument to be strong in age discrimination cases when the firing has occurred only a short time after the hiring. *Id.*; *see also Carlton*, 202 F.3d at 138 ("[T]he [same-actor] inference is less compelling when a significant period of time elapses between the hiring and firing . . . . The seven years between [plaintiff's] hiring and firing significantly weakens the same actor inference.") (citation omitted); *Coleman v. Prudential Relocation*, 975 F. Supp. 234, 241 (W.D.N.Y. 1997) (holding no age discrimination where plaintiff hired at age 51 and discharged 14 months later). Here, plaintiff worked for Lynbrook Glass for over seven years. Moreover, the strength of the same-actor inference is further diluted by the issues of fact raised by, among other things, J. Torsiello's alleged comment and the raises and bonuses received by plaintiff. Therefore, this Court does not find the same-actor inference so compelling in this case to warrant summary judgment in light of the entire record. Similarly, although defendant employs other people in the protected class, such evidence is also not dispositive. *See, e.g., Carlton,* 202 F.3d at 138.

Finally, defendant contends that the fact that plaintiff was given raises and bonuses while he was in his sixties undermines any claim by plaintiff of age discrimination. Defendant cites to case authority for the proposition that the provision of raises and bonuses during an employee's tenure undermines any inferences of age discrimination. *See*, *e.g., Chin v. ABN-AMRO N. Am., Inc.*, 463 F. Supp. 2d 294, 303 (E.D.N.Y. 2006) (citations and quotations omitted). Although the payment of bonuses to plaintiff may undermine an age discrimination under certain circumstances, it is certainly only one factor that must be considered in the totality of the evidence. In fact, plaintiff argues that inferences to be drawn from the evidence regarding bonuses supports his discrimination claim. Specifically, plaintiff argues that plaintiff received raises and bonuses for a number of years and such evidence is inconsistent with defendant's contention that plaintiff had a long history of poor performance, which allegedly led to his termination. Thus, the reasonable inferences to be drawn from the evidence regarding the pay raises and bonuses in conjunction with all the evidence should be resolved by a jury.

In sum, plaintiff's evidence – including that (1) he was replaced by someone twenty-five years younger, (2) at a time close to his firing, he was told by a decision-maker that he was "getting old and breaking down," (3) he was not a chronic poor performer and received pay raises and bonuses – is sufficient, when viewed in the light most favorable to plaintiff (including drawing all reasonable inferences in his favor), to defeat defendant's summary judgment motion. Although defendant has certainly pointed to evidence in the record that (if credited) undermines the strength of the various components of plaintiff's proffered evidence of age discrimination in connection with his termination, these disputed issues should be decided by the jury given the entire record in this case. Accordingly, defendant's motion for summary judgment on the age discrimination claims under federal and state law is denied.

B. Disability Claim Under ADA

A claim of disability discrimination under the New York State Human Rights Law, N.Y.

Exec. Law §§ 290-301 (McKinneys 2005), is governed by the same legal standards that govern federal ADA claims. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000). Thus, to the extent that plaintiff brings a state-law disability-discrimination claim, it would survive on the same basis as his ADA claim.

Defendant moved for summary judgment on the disability claim under the ADA on the ground that plaintiff had failed to produce any evidence that he was fired because of his disability. In his opposition, plaintiff stated that "[h]ere, Plaintiff does not allege that he had a disability, but rather, that Defendant perceived him as disabled." (Pl.'s Opp. Brief, at 22.) Thus, plaintiff has explicitly abandoned an actual disability claim under the ADA and, instead, is seeking to proceed on a "regarded as disabled" claim under the ADA. However, plaintiff has never previously asserted this "regarded as disabled" claim prior to the summary judgment motion. His complaint alleges that he was discriminated against on the basis of disability "by terminating [him] while out on disability leave." (Compl. ¶ 34.) Nowhere in the complaint is there any reference to a "regarded as disabled" claim. In fact, at his deposition, plaintiff was asked directly whether he was claiming he was perceived as being imparied as part of his disability claim and he answered, "No." (Pl.'s Dep. 131.) Thus, defendant contends that plaintiff should not be permitted to raise this new claim at this stage. Defendant argues, in the alternative, that there is absolutely no evidence that plaintiff was regarded by defendant as having a substantially limiting impairment pertaining to his 2005 hip replacement surgery and, thus, defendant would be entitled to summary judgment on any such claim. *See EEOC v. J.B. Hunt Transport, Inc.,* 321 F.3d 69, 74 (2d Cir. 2003) ("As the Supreme Court explained in *Sutton v. United Air Lines, Inc.,* '[t]here are two apparent ways in which individuals may fall within this [§ 12102(2)(c)] statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.'") (citing 527 U.S. 471, 489 (1999)).

The Court will not consider this new claim, raised for the first time in the summary judgment opposition, on an incomplete record without requiring plaintiff to formally move to amend the complaint if he wishes to attempt to pursue such a claim at this late stage. *See, e.g., Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.,* 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997) ("[Plaintiff] in effect is apparently attempting to add a claim never addressed, or even hinted at, in the complaint. Such a step is inappropriate at the summary judgment stage, after the close of discovery, without the Court's leave, and in a brief in opposition to a motion."); *see also DeFilippo v. N.Y.S. Unified Court Sys.,* No. 06-1561-CV, 2007 WL 1174135, at *1 (2d Cir. Apr. 19, 2007) (unpublished order) ("[T]he District Court did not abuse its discretion in prohibiting DeFilippo from raising a due process claim for the first time in his opposition to defendants' summary judgment motion."); *Beckman v. U.S. Postal Serv.,* 79 F. Supp. 2d 394, 407-08 (S.D.N.Y. 2000) ("Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that 'it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.'") (citations omitted) (collecting cases).

Here, defendant noted at oral argument that, because plaintiff stated in his deposition that he was not making any such claim, defendant did not explore the issue further with plaintiff in the discovery process and, therefore, is prejudiced by plaintiff belatedly attempting to assert this new claim at the summary judgment stage. The Court agrees. If plaintiff wishes to attempt to pursue this claim, plaintiff must formally move to amend the complaint. If the Court were to allow such an amendment, it would need to re-open discovery to allow defendant to explore any defenses to this claim and also provide defendant with an opportunity to supplement its summary judgment papers. Therefore, in any proposed motion to amend, the plaintiff would need to explain to the Court why it should allow such an amendment to be made after plaintiff stated unequivocally in his deposition that he was not pursuing such a claim against defendant *and* after the close of discovery and briefing of the summary judgment motion.

## IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment is DENIED as to the age discrimination claim. The disability discrimination claim currently in the complaint has been withdrawn. Plaintiff shall advise the Court in a letter by January 12, 2008 whether he intends to file a motion to amend the complaint to add a "regarded as disabled" claim under the ADA. If plaintiff is not going to make such a motion, a telephone conference call will occur on January 18, 2008, at 2:00 p.m. to set a date for the filing of the Pre-Trial Order and the trial.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 4, 2008
Central Islip, NY

\* \* \*

The attorney for plaintiff Peter Catalano is Saul D. Zabell, Esq., of Zabell & Associates, P.C., 4875 Sunrise Highway, Suite 300, Bohemia, New York, 11716. The attorney for defendant Lynbrook Glass & Architectural Metals Corp. is W. Matthew Groh, of Naness, Chaiet & Naness, LLC, 375 North Broadway, Suite 208, Jericho, New York, 11753.